MARY E. WYMAN & others *vs.* THOMAS HOOPER.

If a guardian, who has obtained license to sell the real estate of his wards, purchases the same himself, either directly or indirectly, the sale is voidable only by the wards, and as against the guardian, or a purchaser claiming under him with knowledge of the circumstances of the sale; but not as against one to whom, before it is so avoided, he conveys or mortgages the estate, for a valuable consideration, and without notice that it had been bought at the guardian's sale for the guardian's benefit.

A deed, from the mortgagee to a third person, of part of the land included in a mortgage does not discharge that portion of the land from the mortgage, as against the mortgagor.

A guardian, licensed by the probate court to sell real estate of his wards, published the following notice of the time and place of sale: " Will be sold at public auction on

Wyman & others *v.* Hooper.

Monday, the 5th of September next, at 12 o'clock M. by license of the probate court for the county of M., the real estate belonging to the children of J. S. late of W. deceased Said estate consists of a part of the deceased's late dwelling-house, and land in front of the same; one other lot of land, called the Hardy lot, containing twenty three acres, one other lot of meadow containing three acres: one other lot of upland containing one and a half acres; and one other lot of woodland, containing about five acres, situated in Burlington. The sale will commence at the said deceased's dwelling-house at the above time. Further particulars, and terms, made known at the time and place of sale." *Held*, that "the Hardy lot" was sufficiently described in the notice; that said lot thereby appeared to be in W.; and that the time and place of the sale of said lot were sufficiently indicated.

PETITION, filed at October term 1852, by four out of five children and heirs at law of Charles Wyman, late of Woburn, deceased, for partition of a lot of land in Woburn, known as "the Hardy lot," of which he died seized in 1836. Trial before *Thomas*, J. who reserved the case for the decision of the whole court upon the following facts:

On the 21st of May 1839, Moses Morrill was duly appointed guardian of said five children, who were all under age, and gave bond as required by law. In the inventory of his ward's estate, the premises described in the petition, and three other lots of land, are described as the property of the wards.

On the 9th of August 1842, Morrill obtained from the judge of probate, after due notice, license to sell the real estate of his wards ; and took the oath and gave the bond required by law.

Pursuant to this license, Morrill advertised lands of his wards for sale by the following advertisement : " Guardian's Sale of Real Estate. Will be sold at public auction, on Monday, the fifth day of September next, at 12 o'clock M. by license of probate court for the county of Middlesex, the real estate belonging to the children of Charles Wyman, late of Woburn, deceased. Said estate consists of a part of the deceased's late dwelling-house, and land in front of the same ; one other lot of and, called the Hardy lot, containing twenty three acres ; one other lot of meadow, containing three acres ; one other lot of upland, containing one and a half acres ; and one other lot of woodland, containing about five acres, situated in Burlington. Said estate will be sold for the support of said children. The sale will commence at the said deceased's

dwelling-house, at the above time. Further particulars, and terms, made known at the time and place of sale. Woburn, Aug. 16th 1842. Moses Morrill, Guardian for said children."

On the 5th of September 1842, Morrill put up said lots of land at public auction, and they were all struck off for $763 to Calvin A. Wyman, to whom, on the same day, Morrill conveyed the land so struck off, and who, on the same day, reconveyed the same for a like consideration, to Morrill, by deed attested by and acknowledged before the same persons who witnessed and acknowledged Morrill's deed to Wyman, one of whom was the auctioneer who struck off said lands.

Calvin A. Wyman, being called as a witness, testified that he was requested by Morrill to attend the sale; that Morrill told him the land would be bid off to him if it did not bring enough, or if no one else bid higher than the sum he was willing to take it at; that he attended the sale; that the land was struck off to him without his bidding at all; that he paid nothing to Morrill for his deed, and that Morrill paid him nothing for reconveying, except fifty cents for his trouble; that the price at which this estate was bid off to him was $22.50 per acre, and was a fair price; and that other persons were present and bid. This evidence was uncontradicted.

The respondent gave in evidence a mortgage to Jacob Munroe of the land sought to be partitioned, together with the three other lots of land in Woburn sold at the same time, dated and recorded September 21st 1842, and admitted to have been made for a valuable consideration, to secure a note for $600 payable in six months: Also a writ sued out by Nichols, Winn & Co. against Morrill on the 10th of December 1842, on which his real estate was attached, and judgment was rendered and execution issued in March 1843: And a deed from a deputy sheriff, dated June 9th 1843, and recorded July 20th 1852, purporting to convey to Nichols, Winn & Co. the equity of redemption in the property described in said mortgage, and reciting that he had sold it to them on the 29th of May 1843. Said execution has never been returned, and no evidence was offered of what had become of it, or whether the officer had ever made a return upon it.

Wyman & others *v.* Hooper.

On the 14th of September 1844, Jacob Munroe, in consideration of $400, gave a quitclaim deed, of the lot in controversy alone, to Nichols, Winn & Co. who on the 16th of September 1844, conveyed the same to the respondent. Both these deeds were recorded on the 17th of September 1844.

Stephen Nichols, one of the firm of Nichols, Winn & Co was introduced as a witness, and testified that he was present at the guardian's sale aforesaid, and never knew or heard of any arrangement such as was testified to by Calvin A. Wyman, and did not know but that the sale to said Wyman was *bona fide*. He also testified that he paid $400 to Munroe for the purpose of obtaining a discharge of his mortgage on the lot in controversy, he and his partners having purchased the equity at sheriff's sale as aforesaid; and that he did all the business about this land in behalf of his firm. There was no evidence of any knowledge on the part of the respondent of the arrangement testified to by Calvin A. Wyman.

In June 1852, at a hearing before the probate court upon the settlement of Morrill's guardianship account, the counsel for the wards gave notice to Morrill that the four petitioners disaffirmed the aforesaid sale of their lands, and Morrill thereupon moved to strike out from his account the proceeds of said lands, with which he had charged himself.

*J. G. Abbott & J. M. Randall,* for the petitioners. The sale by the guardian was void, because the advertisement of the sale was insufficient in these respects: The property was not sufficiently described; the place of sale not certainly indicated, nor even the town in which the property was situated. Rev. Sts. *c.* 71, §§ 15, 17, 35; *c.* 72, §§ 12, 20. *Simonds* v. *Catlin,* 2 Caines, 66, 67. *Whitaker* v. *Sumner,* 7 Pick. 551. *Wellman* v. *Lawrence,* 15 Mass. 326.

The sale to Wyman for the benefit of Morrill was certainly voidable at the election of the wards; and they have disaffirmed it within a reasonable time. *Blood* v. *Hayman,* 13 Met. 231. *Jennison* v. *Hapgood,* 10 Pick. 93. *Litchfield* v. *Cudworth,* 15 Pick. 31, 32. *Shelton* v. *Homer,* 5 Met. 467. *Hunt* v. *Frost,* 4 Cush. 59. Rev. Sts. *c.* 72, § 19.

The respondent cannot set up any title under the sale on execution; because there has been no return of the execution. *Ladd* v. *Blunt*, 4 Mass. 403. *Prescott* v. *Pettee*, 3 Pick. 331.

Nor can the respondent's title under the mortgage to Munroe avail him; for the mortgage was discharged from the land in controversy. The deed of quitclaim cannot operate as an assignment; because it purported to convey only a portion of the lands included in the mortgage. *Wade* v. *Howard*, 6 Pick. 492. *Palmer* v. *Merrill*, 6 Cush. 286. *Gibson* v. *Cooke*, 20 Pick. 15. *Parkman* v. *Welch*, 19 Pick. 231. *Robbins* v. *Bacon*, 3 Greenl. 346.

*A. H. Nelson & J. P. Converse*, for the respondent.

DEWEY, J. The principal point in the present case is that as to the validity of the sale of the land in question, by reason of the fact that the guardian, who was authorized to make such sale on account of his wards, was himself indirectly, but really, the purchaser. The report shows such to have been the case; and we have no doubt that the guardian, making sale under license of the court of probate, for the benefit of his wards, stands in the same relation, in this respect, as an administrator, and alike open to the objection that an agent or trustee to make sale of real estate cannot himself be the purchaser.

But such sale is not absolutely void. The estate passes by such conveyance, liable however to be defeated by the heirs, or wards, as the case may be. But it can only be avoided as against the guardian, or one claiming under him with knowledge of the circumstances of the sale, or a purchaser who has not paid a full and valuable consideration. If, before it is avoided by the heirs, the estate has been transferred by such purchaser, though he may have been an administrator, to a subsequent *bona fide* purchaser, upon a good and sufficient consideration, without notice that it had been bought at the administrator's sale, for the administrator's benefit, such grantee will hold the same as against the heirs. *Blood* v. *Hayman*, 13 Met. 236. Had the conveyance by Morrill to Munroe been an absolute one, the grantee would therefore clearly have acquired a good title as against the petitioners.

In regard to the respondent's title under the sale on execution, it does not appear that the execution under which the sale was made was ever returned to the clerk's office; nor is there any evidence as to its loss, or any thing to show that any certificate was ever indorsed thereon by the officer of his doings on the same. In the present state of the evidence upon this point, the sale of the equity of redemption of Morrill is not, in our opinion, sufficiently shown by any competent legal evidence, to authorize us to hold that there is a valid title in the defendant from this source.

The further inquiry is as to the effect of the conveyance in mortgage by Morrill to Munroe. As to this, we have no doubt that it would have the like effect in passing a valid title, as respects the avoidance by heirs or wards, as an absolute conveyance. *Robbins* v. *Bates*, 4 Cush. 106. In either case, the legal estate has passed to a third person; and if *bona fide*, and for a valuable consideration, he will hold it against the heirs or wards, as the case may be.

It is then however urged that this mortgage has been discharged. If so, and if by payment of the debt secured by the mortgage, or other mode, the mortgagor has removed the same, or if the mortgagee has by his deed of quitclaim released the same to him, then of course it cannot be set up as a valid outstanding title against the petitioners. It is not however contended that this mortgage has ever been paid by the mortgagor, or that any release of the same has ever been given by the mortgagee. The only discharge of this mortgage, relied upon, results from a quitclaim given by the mortgagee to Nichols, Winn & Co. on the 17th of September 1844, they being, as was supposed, the purchasers of the equity of redemption, and intending to remove the mortgage for their own benefit. Had this been a deed from the mortgagee to Morrill, releasing these premises, it might have operated to discharge the mortgage. But it was a quitclaim to third persons, having in fact no previous connection with the title. It was therefore a mere transfer of the interest of the mortgagee in that portion of the mortgaged premises, so far as it could be transferred by an instrument in that form.

The further objection is urged that the quitclaim being of only one of several parcels mortgaged to Munroe, it was not competent for him to assign the mortgage as to such parcel, and so nothing passed by the deed. If this were so, it would not avail the petitioners, or remove the mortgage as an outstanding title. If the parcel, the interest in which was released to the respondent, passed to him by force and effect of that deed; or if, like the case of many inoperative deeds, the legal title remained in Munroe, merely because it was incompetent for him to convey to a third person his legal interest in a part only of the mortgaged premises, the petitioners would still be barred by this mortgage.

A further objection taken to the validity of the sale by the guardian, under license from the probate court, is that there was no sufficient notice given of the time and place of the sale. We do not perceive any sufficient ground for this objection. " The Hardy lot, containing about twenty three acres," which is the lot in controversy, was advertised under that form of description. Looking at the whole advertisement, it appears that it was in Woburn; that it was the real estate belonging to the children of Charles Wyman, late of Woburn; that the sale would commence at the deceased's dwelling-house the 5th of September at 12 M.; with the addition, that further particulars would be made known at the time and place of sale. We do not see any sufficient reason therefore for setting aside the sale on that ground.

The result is, that it was too late for the wards to avoid this conveyance by the guardian, at the time they gave notice to that effect, in June 1852.     *Partition refused.*